1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RYAN INDIANA CURRY,                      No. 2:23-cv-00791-TLN-EFB (PC)

12                    Plaintiff,

13          v.                                 FINDINGS AND RECOMMENDATIONS

14    ROLLIN, et al.,

15                    Defendants.

16

17          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

18    U.S.C. § 1983.  Plaintiff initiated this action on April 26, 2023, and filed his first amended

19    complaint (FAC) on June 26, 2023.  ECF Nos. 1 and 13.  Plaintiff's FAC alleges that defendant

20    correctional officers Duty, Kelley, Brown, Murray, and Rolland[1] housed plaintiff in a building

21    designated for COVID-19 positive inmates even though plaintiff tested negative for the virus.

22    Plaintiff alleges that as a result, he contracted COVID-19 and became very ill.  After screening

23    the FAC, this court found that plaintiff's allegations stated potentially cognizable Eighth

24    Amendment deliberate indifference claims against all defendants.  ECF No. 14.  The parties

25    conducted discovery, and defendants have now filed a motion for summary judgment on both

26    procedural and substantive grounds.  ECF No. 53.  Plaintiff has opposed the motion.  ECF No.

27    _____

28          [1] Defendant Rolland was erroneously sued as "Rollin."

                                              1

1    56.  For the following reasons, defendants' motion for summary judgment must be GRANTED.

2        **I.       The Complaint**

3            Plaintiff is currently incarcerated at the California State Prison in Los Angeles County.

4    ECF No. 33.  Plaintiff's claims against defendants for deliberate indifference under the Eighth

5    Amendment arise from plaintiff's previous incarceration at High Desert State Prison (HDSP),

6    where defendants were employed as correctional officers.  ECF No. 13.

7            According to plaintiff, in 2022 he was wrongly housed in a COVID-19 designated

8    building (Facility C) that housed inmates that were sick with or positive for COVID-19.  ECF No.

9    13 at 4.  Plaintiff alleges that even though he tested negative for COVID-19, he was forced to

10   move to Facility C.  Plaintiff subsequently contracted COVID-19, and suffered from, *inter alia*,

11   fever, chills, shortness of breath, body aches, loss of taste and smell, and diarrhea.  Plaintiff

12   alleges that he continues to suffer daily headaches as a result of his COVID-19 infection, for

13   which he is required to take medication.  *Id.*  Plaintiff seeks compensatory and punitive damages,

14   and any other equitable relief deemed necessary.  *Id.* at 7.

15       **II.     Summary Judgment Standard**

16           Summary judgment is appropriate when there is "no genuine dispute as to any material

17   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

18   judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

19   to the determination of the issues in the case, or in which there is insufficient evidence for a jury

20   to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

21   (1998); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

22   *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

23   motion asks whether the evidence presents a sufficient disagreement to require submission to a

24   jury.

25           The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

26   or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

27   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

28   trial.'"  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R.

1    Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary

2    judgment practice, the moving party bears the initial responsibility of presenting the basis for its

3    motion and identifying those portions of the record, together with affidavits, if any, that it

4    believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323;

5    *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets

6    its burden with a properly supported motion, the burden then shifts to the opposing party to

7    present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*,

8    477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

9        A clear focus on where the burden of proof lies as to the factual issue in question is crucial

10    to summary judgment procedures.  Depending on which party bears that burden, the party seeking

11    summary judgment does not necessarily need to submit any evidence of its own.  When the

12    opposing party would have the burden of proof on a dispositive issue at trial, the moving party

13    need not produce evidence which negates the opponent's claim.  *See, e.g., Lujan v. National

14    Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

15    which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

16    24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

17    summary judgment motion may properly be made in reliance solely on the 'pleadings,

18    depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

19    should be entered, after adequate time for discovery and upon motion, against a party who fails to

20    make a showing sufficient to establish the existence of an element essential to that party's case,

21    and on which that party will bear the burden of proof at trial.  *See id*. at 322.  In such a

22    circumstance, summary judgment must be granted, "so long as whatever is before the district

23    court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

24    satisfied." *Id*. at 323.

25        To defeat summary judgment the opposing party must establish a genuine dispute as to a

26    material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

27    is material, *i.e.*, one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

28    248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

3

1    will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

2    determined by the substantive law applicable for the claim in question.  *Id*.  If the opposing party

3    is unable to produce evidence sufficient to establish a required element of its claim that party fails

4    in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

5    of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S.

6    at 322.

7         Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

8    the court must again focus on which party bears the burden of proof on the factual issue in

9    question.  Where the party opposing summary judgment would bear the burden of proof at trial on

10   the factual issue in dispute, that party must produce evidence sufficient to support its factual

11   claim.  Conclusory allegations, unsupported by evidence, are insufficient to defeat the motion.

12   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit

13   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

14   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

15   demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such

16   that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

17   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

18        The court does not determine witness credibility.  It believes the opposing party's

19   evidence and draws inferences most favorably for the opposing party.  *See id*. at 249, 255;

20   *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

21   proponent must adduce evidence of a factual predicate from which to draw inferences.  *Am. Int'l*

22   *Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing

23   *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary

24   judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On

25   the other hand, the opposing party "must do more than simply show that there is some

26   metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead

27   a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

28   *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary

                                                    4

1    judgment.

2        Concurrent with their motion for summary judgment, defendants advised plaintiff of the

3    requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

4    ECF No. 34-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d

5    952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999).

6        **III.    Analysis**

7            **A.  Administrative Exhaustion as to Defendant Rolland**

8        Defendant Rolland maintains that she was not named in any of plaintiff's grievances he

9    submitted regarding his claims in this action.  Thus, she argues, she is entitled to dismissal of the

10   claims against her.

11       The Prison Litigation Reform Act (PLRA) of 1995 provides that "[n]o action shall be

12   brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a

13   prisoner confined in any jail, prison, or other correctional facility until such administrative

14   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA applies to all suits

15   about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and a prisoner is required to exhaust

16   those remedies which are available.  *See Booth v. Chumer*, 532 U.S. 731, 736 (2001).  To satisfy

17   the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has

18   included in the complaint.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534

19   U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and

20   opportunity to address complaints internally before allowing the initiation of a federal case").

21       Dismissal for failure to exhaust should generally be brought and determined by way of a

22   motion for summary judgment under Rule 56.  *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir.

23   2014).  Under this rubric, defendant bears the burden of demonstrating that administrative

24   remedies were available, and that the plaintiff did not exhaust those remedies.  *Id.* at 1172.  If

25   defendant carries this burden, then plaintiff must "come forward with evidence showing that there

26   is something in his particular case that made the existing and generally available administrative

27   remedies effectively unavailable to him."  *Id.*  If the undisputed evidence, construed in the light

28   most favorable to plaintiff, demonstrates that plaintiff did not exhaust the available administrative

5

1   remedies, then defendant is entitled to summary judgment.  *Id.* at 1166.

2           Here, a two-step process was available to plaintiff to resolve health care grievances.  *See*

3   Cal. Cod Regs. tit. 15, § 3999.225, *et seq.*  The first step requires a grievance submitted to the

4   Health Care Grievance Office (HCGO).  *Id.* at § 3999.227(b).  If a plaintiff is dissatisfied with the

5   result of a grievance, he or she may file an appeal.  *Id.* at § 3999.229(a).

6           Plaintiff filed three grievances addressing his claims in this action.  ECF No. 53-2;

7   Declaration of D. Gouldy (Gouldy Decl) ¶¶ 7-9, Exs. 2-4.  Defendant Rolland was not named in

8   any of these grievances.  Plaintiff does not submit any argument explaining why defendant

9   Rolland was not named, or why the claims against her should move forward.  The undisputed

10  evidence, construed in the light most favorable to plaintiff, demonstrates that plaintiff did not

11  exhaust the available administrative remedies as to defendant Rolland.  *Albino*, 747 F.3d at 1166.

12  Thus, defendant Rolland is entitled to summary judgment and *-the claims against her should be

13  dismissed.  *See, e.g.*, *Robinson v. Cryer*, 2023 WL 3007344 at *6-7 (E.D. Cal. 2023) (finding that

14  administrative remedies are unexhausted against any defendant not identified in a medical

15  grievance).

16                          **B.    Eighth Amendment Claims**

17          Plaintiff's Eighth Amendment claims for deliberate indifference to medical needs against

18  defendants Duty, Kelly, Brown, and Murray are properly exhausted.  Specifically, plaintiff

19  maintains that all defendants were indifferent to his medical needs in violation of the Eighth

20  Amendment by placing him in a housing unit designed for COVID-19 positive inmates when he

21  was negative for COVID-19.  ECF No. 13.  Plaintiff also alleges that as a result, he contracted

22  COVID-19 and continues to suffer as a result.  *Id.*

23                          **1.   Undisputed Facts[2]**

24          In response to the COVID-19 pandemic, the California Correctional Health Care Services

25  (CCHCS) promulgated Interim Guidance for the management of COVID-19 at CDCR facilities.

26  ECF No. 53-5; Declaration of J. Bassett (Bassett Decl.) ¶ 3.  During the relevant time period of

27

28          _____

            [2] Defendants filed a separate Statement of Undisputed Facts.  ECF No. 53-1.

1      summer 2022, the CCHCS Interim Guidance in effect s*tated that sick inmates with a confirmed

2      or suspected case of COVID-19 must be isolated.  In addition, inmates exposed to COVID-19 but

3      not ill must be quarantined.  All inmates in isolation received twice daily nursing assessments and

4      could be released after: 1) a negative COVID-19 test and 2) the longer of fourteen days after the

5      onset of symptoms or a positive test if no symptoms, or five days after the resolution of fever

6      without the use of anti-pyretic medication.  *Id.* at ¶ 3(a)-3(c), Ex. 1.  Under the Interim Guidance,

7      prison health care providers had the sole discretion to assign or remove inmates from isolation or

8      quarantine; corrections staff did not have that authority.  *Id.* at ¶ 4.

9          On June 16, 2022, plaintiff was seen by health care staff for a sore throat.  *Id.* at ¶ 5.

10     According to the progress notes recording plaintiff's visit with health care staff, plaintiff reported

11     "10/10 pain on the right side of throat [and] state[d] 'it feels like someone choked me and pressed

12     their thumb into my neck.'"  *Id.*, Ex. 2.  Plaintiff's doctor ordered a "[r]apid flu and Covid [test,

13     and] both were negative."  *Id.*  Nonetheless, the physician ordered plaintiff to quarantine based on

14     the "[n]eed to rule out COVID 19 infection."  *Id.*  Plaintiff was ordered to be transferred to pre-

15     isolation in Section A of Facility C, the COVID isolation section.  ECF No. 53-4; Declaration of

16     T. Murray (Murray Decl.) ¶ 4

17          On June 16, 2022, plaintiff was subsequently placed in pre-isolation in Section A of

18     Facility C, and he remained there until June 23, 2022, when he was transferred to quarantine.

19     ECF No. 13.  Plaintiff's cell was a single cell with solid walls and a solid door.  *Id.*; Pl. Dep.

20     33:2-5, 34:10-22, 78:5-16.  According to an outside consultant, there was little risk of inmates

21     contracting COVID-19 between cells.  ECF No. 53-7; Declaration of M. Brown (Brown Decl.) ¶

22     3.  Whenever a cell door was opened, both inmates and staff were required to wear masks.  *Id.*

23     Plaintiff's claims of deliberate indifference arise from his placement in isolation from June 16-23,

24     2022, and he does not challenge any other placements.  Pl. Dep. 39-50.

25          Plaintiff had contact with medical staff every day while he was in isolation.  Pl. Dep.

26     59:22-60:1, 61:11-17; ECF No. 53-3; Declaration of J. Duty (Duty Decl.) ¶ 5.  Around June 19 or

27     20, plaintiff told Licensed Vocational Nurse Folorunzo that he should not be in isolation because

28     of his negative COVID test.  Pl. Dep. 60-61.

1    Plaintiff initiated three grievances about his time in the isolation unit.  His first grievance

2    was on June 17, 2022 (Grievance 323); his second was on June 27, 2022 (Grievance 332); his

3    third was on July 8, 2022 (Grievance 352).  ECF No. 53-2; Declaration of D. Gouldy (Gouldy

4    Decl.) ¶¶ 7-9.  Plaintiff first tested positive for COVID-19 on July 6, 2022, thirteen days after he

5    left the isolation unit.  Pl. Dep. 41.

6                                **2.  Legal Standard**

7        To succeed on an Eighth Amendment claim predicated on deliberate indifference to

8    medical need, a plaintiff must establish that: 1) he or she had a serious medical need; and 2) the

9    defendant's response to that need was deliberately indifferent.  *Jett v. Penner,* 439 F.3d 1091,

10   1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical

11   need exists if the failure to treat the condition could result in further significant injury or the

12   unnecessary and wanton infliction of pain.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may

13   be shown by the denial, delay, or intentional interference with medical treatment, or by the way in

14   which medical care is provided.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

15       To act with deliberate indifference, a prison official must both be aware of facts from

16   which the inference could be drawn that a substantial risk of serious harm exists, and he must also

17   draw the inference.  *Farmer*, 511 U.S. at 837.  Thus, a defendant will be liable for violating the

18   Eighth Amendment if he knows that plaintiff faces "a substantial risk of serious harm and

19   disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847.  A physician

20   need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment

21   rights.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently

22   treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate

23   indifference in a particular case.  *Id.*

24       It is important to differentiate common law negligence claims of malpractice from claims

25   predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment.

26   In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not

27   support this cause of action."  *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.

28   1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th

1    Cir. 2004).  Rather, plaintiff must show a deliberate disregard for a known medical need.  The

2    Ninth Circuit has made clear that a difference of medical opinion is, as a matter of law,

3    insufficient to establish deliberate indifference.  *Toguchi*, 391 F.3d at 1058.

4          Because plaintiff's allegations concern custody and housing decisions, the court also

5    reviews his allegations under the general Eighth Amendment standard applicable to non-medical

6    claims.  A prison official violates the Eighth Amendment prohibition against cruel and unusual

7    punishment "only when two requirements" – one objective, one subjective – "are met."  *Farmer*,

8    511 U.S. at 834.  Under the objective prong, the inmate must show that he is incarcerated under

9    conditions posing a substantial risk of serious harm.  *Id.* at 833, 837.  To satisfy the subjective

10   prong of the deliberate indifference standard, a plaintiff must show that that a prison official

11   "knows that inmates face a substantial risk of serious harm and disregard[s] that risk by failing to

12   take reasonable measures to abate it."  *Farmer*, 511 U.S. at 825.

### 3.  Analysis

#### a.  Objective Prong

15         Defendants do not specifically address the objective prong in their motion.  ECF No. 53.

16   Nonetheless, in the interests of thoroughness, the court will do so.[3]

17         Under the objective prong, the inmate must show that he is incarcerated under conditions

18   posing a substantial risk of serious harm.  *Farmer*, 511 U.S. at 833, 837.  "[T]here is no question

19   that an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison

20   does not take adequate measures to counter the spread of the virus.  Courts have long recognized

21   that conditions posing an elevated chance of exposure to an infectious disease can pose a

22   substantial risk of serious harm."  *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020); *see*

23   *also Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020) ("[n]o one questions that

24   [COVID-19] poses a substantial risk of serious harm" to prisoners).

25         Here, the undisputed facts show that plaintiff was transferred to Section A Facility C,

26   designated as the COVID isolation section, when he had tested negative for COVID-19.

27   _____

28         [3] Defendants instead focus on their argument that plaintiff cannot meet his burden under
     the subjective prong for numerous reasons.  ECF No. 53 at 5-8.

1    Declaration of T. Murray (Murray Decl.) ¶ 4; Plaintiff's Depo. at 32:22-24; 78:5-16; 33:2-5;

2    34:10-22.  It is also undisputed that plaintiff informed a nurse that he should not be in the COVID

3    isolation section because of his negative test results, and that plaintiff subsequently tested positive

4    for COVID.  Plaintiff's Depo. at 41:1-3, 60-61.  As such, plaintiff can show that he was

5    incarcerated under conditions posing a substantial risk of serious harm.  *See, e.g., Jones v.*

6    *Sherman*, 2022 WL 783452, *7 (E.D. Cal. March 11, 2022), *report and recommendation adopted*,

7    2022 WL 4238875 (E.D. Cal. Sept. 13, 2022) (finding that "many courts have found that COVID-

8    19 poses a substantial risk of serious harm, satisfying the objective prong").

9                              **b.  Subjective Prong**

10           For numerous reasons, defendants maintain that they were not deliberately indifferent to

11   plaintiff's medical needs, and thus that they are entitled to summary judgment.  First, defendants

12   maintain that their placement of plaintiff into Section A of Facility C complied with the

13   applicable guidance and thus as a matter of law cannot be evidence of knowledge of an excessive

14   disregard for inmate safety.

15           Plaintiff was placed into isolation after he was seen by medical staff for severe sore throat

16   pain.  Bassett Decl. ¶ 5.  Although plaintiff's COVID test was negative, he was actively

17   symptomatic, and his physician ordered him quarantined based on the "[n]eed to rule out COVID

18   19 infection."  *Id.* at Ex. 2.  The Interim Guidance in place mandated isolation of inmates with

19   confirmed or suspected cases of COVID.  *Id.* at ¶ 3(a)-3(c), Ex. 1.

20           "As it concerns prison officials' response to the COVID-19 pandemic, '[t]he key inquiry

21   is not whether prison officials perfectly responded, complied with every CDC guideline, or

22   whether their efforts ultimately averted the risk; instead the key inquiry is whether they responded

23   reasonably to the risk.'"  *Jones v. Pollard*, 2023 WL 4728802, at *7 (S.D. Cal. July 24, 2023).

24   When a placement decision complies with applicable "[g]uidelines to limit the spread of COVID-

25   19, that decision cannot, without more, demonstrate [deliberate indifference]."  *Id.* at *8.  Here,

26   the physician's medical decision to place plaintiff in isolation substantially complied with the

27   applicable guidance.  Although plaintiff had tested negative for COVID, a negative test does not

28   guarantee lack of infection, and plaintiff was actively symptomatic with symptoms consistent

                                                    10

1    with COVID.  Plaintiff has failed to raise a genuine issue of material fact that his approximately

2    week-long placement in a single cell with solid walls and a door, and daily interactions with

3    medical staff, constituted unreasonable behavior and disregard of an excessive risk to plaintiff's

4    health and safety.  *Id.*; *see also Farmer*, 511 U.S. at 845; *McCord v. Haynes*, 2022 WL 2194984,

5    at *4 (W.D. Wash. May 24, 2022), *report and recommendation adopted by* 2022 WL 2192944

6    (June 17, 2022) (finding that there was no showing of deliberate indifference where defendants

7    addressed and attempted to mitigate COVID-19 risks).

8          Defendants also maintain that plaintiff is unable to demonstrate deliberate indifference

9    where, as here, defendants were following the orders of medical staff in good faith.  It is

10   undisputed that none of the defendants were part of plaintiff's medical care team.  It is also

11   undisputed that plaintiff's physician ordered plaintiff to be housed in the isolation unit.  Bassett

12   Decl. ¶ 5, Ex. 2.  As defendants correctly point out, "[n]on-medical personnel are generally

13   entitled to rely on the opinions of medical professionals with respect to an inmate's treatment."

14   *Goode v. Canedo*, 2024 WL 1914352, at *5 (S.D. Cal. May 1, 2024) (collecting cases).  In his

15   opposition to defendants' motion for summary judgment, plaintiff relies on cases finding

16   deliberate indifference where prison officials disregarded medical advice.  ECF No. 56 at 7.

17   Here, however, plaintiff was ordered into isolation by a physician and the defendants plainly did

18   not ignore medical advice.[4]  Under such circumstances, plaintiff cannot demonstrate that a

19   rational trier of fact would find that defendants' compliance with the orders of medical staff

20   constituted unreasonable behavior and disregard of an excessive risk to plaintiff's health and

21   safety.

22         Plaintiff also argues in his opposition that he repeatedly requested removal from his single

23   cell isolation placement, and that ignoring prisoners' requests for medical attention can constitute

24   deliberate indifference.  ECF No. 56 at 9.  There is no doubt that failure to respond to multiple

25   _____

26   [4] In addition to his opposition to defendants' motion for summary judgment, plaintiff has
     filed a sur-reply and a supplement.  ECF Nos. 61 and 67.  Although plaintiff did not request or
27   receive leave of court to file these pleadings, the court has reviewed them.  They do not refute the
     court's conclusion that plaintiff is unable to demonstrate deliberate indifference on the part of
     defendants.

28

1   requests for medical attention can result in a finding of deliberate indifference.  *See, e.g. Jett v.*

2   *Penner*, 439 F.3d 1091, 1048 (9th Cir. 2006).  But that was not the case here.  In *Jett*, the

3   defendant physician did not order orthopedic follow-up for plaintiff's fracture until six months

4   after plaintiff's injury, despite plaintiff's repeated requests for such care.  *Id.* at 1096-97.  Under

5   such circumstances, the court found that a jury could "'infer deliberate indifference from the fact

6   that [the doctor] knew the extent of the [the inmate's] pain, knew the course of treatment was

7   largely ineffective, and declined to do anything more to attempt to improve [the inmate's]

8   situation.'"  *Id.* at 1098 (citing *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994)).  In

9   addition, the court found that the case was not one involving differing medical opinions because

10  defendant physician – as well as other physicians who had seen plaintiff – recognized plaintiff's

11  need to see an orthopedist, but did not promptly make the necessary referrals.  *Id.*

12          Here, by contrast, none of the defendants were a part of plaintiff's medical team who

13  ordered him into COVID isolation; rather, they followed the orders of medical professionals in

14  doing so.  *See Goode*, 2024 WL 1914352, at *5 (finding that "[n]on-medical personnel are

15  generally entitled to rely on the opinions of medical professionals with respect to an inmate's

16  treatment.").  In addition, as discussed *supra*, plaintiff's placement complied with the applicable

17  California Correctional Health Care Services Interim Guidance, and plaintiff had daily

18  interactions with medical staff.  *See Jones,* 2023 WL 4728802, at *7 (S.D. Cal. July 24, 2023)

19  (finding that where a prison official's "decision designating isolation/quarantine cells rested on

20  CCHCS' Guidelines to limit the spread of COVID-19, that decision cannot, without more,

21  demonstrate he was deliberately indifferent to Plaintiff's health and safety.")  Finally, as he

22  requested, plaintiff *was* moved from his single cell isolation after eight days – in contrast to a six-

23  month delay in treatment in *Jett*.  Under such circumstances, plaintiff cannot demonstrate a

24  genuine issue of material fact as to whether defendants' conduct constituted deliberate

25  indifference to plaintiff's medical needs.  Thus, even accepting plaintiff's allegations as true, and

26  viewing the evidence in the light most favorable to plaintiff, a rational trier of fact could not find

27  that plaintiff's placement in a COVID isolation cell from June 16-June 23, 2022 violated the

28  Eighth Amendment.

1    **IV.    Recommendation**

2        For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion

3    for summary judgment (ECF No. 53) be GRANTED.

4        These findings and recommendations are submitted to the United States District Judge

5    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days

6    after being served with these findings and recommendations, any party may file written

7    objections with the court and serve a copy on all parties. Such a document should be captioned

8    "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

9    within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

10   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

11

12   Dated: August 7, 2025

13                                               EDMUND F. BRENNAN
                                                 UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13